[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-14904
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 28, 2010
JOHN LEY
CLERK

D. C. Docket No. 09-00015-CR-CG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JUAN CASTELAN-BENITEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(April 28, 2010)

Before BLACK, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Juan Castelan-Benitez appeals his conviction for conspiracy to possess cocaine with the intent to distribute, in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2. On appeal, Castelan-Benitez argues that: (1) the district court erred in denying his motion to suppress cocaine obtained during a traffic stop because no reasonable suspicion existed for the officer to extend the stop; (2) the evidence was insufficient to convict him of conspiracy to possess cocaine with the intent to distribute; and (3) the district court abused its discretion in refusing to admit evidence of the prior convictions and the guilty plea of coconspirator Mario Lopez.

I.

The district court denied Castelan-Benitez's motion to suppress the cocaine because it found that the officer had a reasonable suspicion to extend the stop even after he issued a Castelan-Benitez a warning. The district court concluded that Castelan-Benitez and Lopez's extreme nervousness and a suspiciously placed air freshener, both of which the officer had been trained to notice, provided the officer with the requisite suspicion to continue the investigation. It was this continued investigation that ultimately led to the discovery of the hidden cocaine.

In reviewing a district court's ruling on a motion to suppress, we review the court's factual findings for clear error and the application of the law to those facts *de novo*. *United States v. Newsome*, 475 F.3d 1221, 1223 (11th Cir. 2007). We

2

construe the facts in the light most favorable to the prevailing party, in this case, the Government. *See id.* at 1223–24.

Traffic stops are seizures within the meaning of the Fourth Amendment, and, ordinarily, they may last no longer than necessary to process the traffic violation. *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001). An exception to this rule applies, however, when the officer has an articulable suspicion of other illegal activity. *Id.* In such a case, the officer may extend the traffic stop.

Here, as Castelan-Benitez acknowledges, Deputy Clark Bolton stopped the car after determining that it was following another vehicle too closely. Thus, the initial stop was for a routine traffic violation. But, as the record shows, Bolton was legally permitted to continue to investigate, even after he wrote Castelan-Benitez a warning, because he had a "particularized and objective basis for suspecting legal wrongdoing." *See United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 750 (2002) (quotations omitted).

As Bolton approached the car, he noticed an air freshener located in the rear cargo area (an unusual place for an air freshener) and he "smelled the strong odor of the air fresheners in the vehicle." He noticed that Castelan-Benitez and Lopez were both breathing rapidly and that they were extraordinarily nervous. These cues aroused suspicion in Bolton, who testified that during his narcotics training he

3

learned to be particularly aware of the placement of air fresheners, driver and passenger nervousness, potential concealment in the natural voids of vehicles, and travel explanations that seem nonsensical. Thus, given his training, Bolton reasonably suspected that Castelan-Benitez and Lopez may have been involved in criminal activity and, as such, Bolton permissibly extended the traffic stop. *See Arvizu*, 534 U.S. at 273.

Continuing his investigation, Bolton questioned Lopez regarding the purpose of the trip, and, when he received a suspicious answer, Bolton requested permission to search the car. Castelan-Benitez then voluntarily consented to the search.[1] As a result, the remainder of the investigation, including the use of a search dog to locate the drugs, was constitutionally permissible. *See United States v. Garcia*, 890 F.2d 355, 360 (11th Cir. 1989) (holding that a search pursuant to voluntary consent does not violate the Fourth Amendment's prohibition on warrantless searches). Accordingly, because there was no constitutional violation, the district court properly denied Castelan-Benitez's motion to suppress the evidence obtained from the search. *See id*.

---

[1] On appeal, Castelan-Benitez does not contend otherwise.

II.

Castelan-Benitez next argues that the Government's evidence was insufficient to convict him of conspiracy to possess cocaine with the intent to distribute. He admits that he was the owner and driver of the vehicle in which the cocaine was found, but argues that he had no knowledge of the cocaine's presence. We review de novo this challenge to the sufficiency of the evidence, both viewing the evidence and making all reasonable inferences and credibility choices in the Government's favor. *See United States v. Wright*, 392 F.3d 1269, 1273 (11th Cir. 2004).

To sustain a conviction for conspiracy to possess with intent to distribute, the Government must prove beyond a reasonable doubt that: "(1) an illegal agreement existed; (2) the defendant knew of it; and (3) the defendant, with knowledge, voluntarily joined it." *United States v. McDowell*, 250 F.3d 1354, 1365 (11th Cir. 2001). Commonly, the government does not prove a defendant's participation in a criminal conspiracy by direct evidence, but rather presents circumstantial evidence from which "a common purpose and plan may be inferred." *Id.* (quotations omitted).

Here, the Government's evidence revealed that Castelan-Benitez was driving and owned the vehicle in which the cocaine was found, thus placing him at the

5

scene of the crime. *See United States v. Lyons*, 53 F.3d 1198, 1201 (11th Cir. 1995) ("Presence [at the scene of the crime] . . . raises a permissible inference of participation in the conspiracy."). Both Castelan-Benitez and Lopez's behavior indicated that both men knew the drugs were hidden in the car—the men were breathing rapidly, Castelan-Benitez's hands were shaking, and he failed to make eye-contact with Deputy Bolton. Additionally, Lopez's bogus explanation of the trip's purpose, the hiding and disguising of the drugs, and the presence of excessive air fresheners all further indicate that the two men were engaged in a common criminal plan or scheme to transport cocaine, and had gone to significant lengths to cover their activities. From this circumstantial evidence, a reasonable jury could have concluded beyond a reasonable doubt that (1) a common plan to transport cocaine existed, (2) Castelan-Benitez knew of the plan, and (3) Castelan-Benitez voluntarily participated in that plan by using his car to transport the cocaine. *See McDowell*, 250 F.3d at 1365. Thus, the evidence supports Castelan-Benitez's conviction for conspiracy to possess cocaine with the intent to distribute.[2]

---

[2] We note that to sustain the jury's verdict the evidence need not exclude every reasonable hypothesis of innocence or be inconsistent with every conclusion except that of guilt. *United States v. Sepulveda*, 115 F.3d 882, 888 (11th Cir. 1997).

III.

Third, Castelan-Benitez argues that the district court abused its discretion in excluding evidence of the prior convictions and guilty plea of coconspirator Lopez. Castelan-Benitez sought to admit this evidence pursuant to Federal Rule of Evidence 404(b); we review the district court's denial of Castelan-Benitez Rule 404(b) motion for abuse of discretion. *See United States v. Perez*, 443 F.3d 772, 774 (11th Cir. 2006).

Courts use a three-part test to determine whether evidence is admissible under Rule 404(b): "(1) the evidence must be relevant to an issue other than the defendant's character; (2) there must be sufficient proof so that the factfinder could find that the defendant committed the extrinsic act; and (3) the evidence must possess probative value that is not substantially outweighed by undue prejudice." *Id.* at 779.

Castelan-Benitez contends that this evidence was permissible, as it would have shown Lopez's "intent, motive, opportunity, and plan to commit the drug trafficking offense"—all of which are permissible purposes under Rule 404(b). But, as the district court determined, the proffered evidence does not serve any of these permissible purposes. Evidence showing that Lopez had previously been convicted of drug crimes and that he had pled guilty in this drug case do not shed

any light on whether Castelan-Benitez also participated in the conspiracy. In its discretion, the district court explained that Castelan-Benitez sought to introduce the evidence of Lopez's criminal history to imply that "it was the other guy who in essence was the perpetrator. And so what [Castelan-Benitez] was seeking to have this jury infer from the fact that the other guy had prior criminal convictions for drugs is that he was the guy that the drugs belonged to—which is exactly what you cannot use 404(b) for."

In short, Castelan-Benitez failed to demonstrate that the past convictions and guilty plea were not offered "to prove the character of [Lopez] in order to show action conformity therewith." *See United States v. Cohen*, 888 F.2d 770, 776 (11th Cir. 1989). Thus, Castelan-Benitez has not met the first prong of our Rule 404(b) analysis. *See Perez*, 443 F.3d at 779 (holding that the evidence first "must be relevant to an issue other than . . . character"). Accordingly, the district court did not abuse its discretion in excluding the evidence of Lopez's criminal history and guilty plea.

**AFFIRMED.**